UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA MITCHELL, et al.,

    Plaintiffs,

vs.

ABERCROMBIE & FITCH,
et al.,

    Defendants.

Case No. C2-04-306

Judge Edmund A. Sargus, Jr.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on **Defendants'** Motion to Dismiss Plaintiff Scott Oros's claim under Count Two of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In Count Two, Plaintiff Oros, a Pennsylvania resident, along with Ohio residents, Plaintiffs Melissa Mitchell and Jennifer Frietsch, on behalf of themselves and similarly situated class members, allege that Defendants, Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc. ("Abercrombie" or "Defendants") violated the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03 (A), by failing to pay non-exempt store managers, assistant managers and managers-in-training proper compensation for overtime. Defendants move for dismissal only as to Plaintiff Oros's claim under Ohio Rev. Code § 4111.03. For the reasons that follow, Defendants' Motion to Dismiss Oros's claim under Count Two is granted.

## I.

The Court has set forth the factual background of this case in its previous Opinion and Order of December 28, 2004 and will now relate only those facts that are relevant to Plaintiff Scott Oros's claim. Oros was employed by Abercrombie beginning in January 2003, initially as a manger-in-training, then as an assistant manager, and eventually as a store manager. Oros served as a store manager from June 2003 through his resignation in October 2003 in one of Abercrombie's Pennsylvania stores. (Amend. Compl., ¶ 6.) He does not allege that he performed any work for Abercrombie in the State of Ohio.

Plaintiff asserts that Defendants gave him and others in his Class "manager" titles to avoid paying them overtime compensation. Plaintiff Oros contends that while he and others were given the title of manager, 90 percent of their work consisted of sales, arranging stock, working the cash register and other clerical and routine tasks that are done by sale associates. (Amend. Compl., ¶ 34.) Plaintiff further asserts that he and other managers had no discretion to decide general business policies or operations, such as how many employee hours would be allocated to their stores or decisions relating to merchandising, store layout or inventory. Instead, Plaintiff Oros asserts that all management and business decisions were made directly by corporate decision makers. (Amend. Compl, ¶ 36.)

Plaintiff also allege that Abercrombie required him and other store managers to work well over 40 hours a week. (Amend. Compl., ¶ 40.) Although Abercrombie paid a supplemental pay rate to assistant managers and managers-in-training, Abercrombie paid no overtime compensation to store managers who worked in excess of a 40 hour work week. (Amend. Compl., ¶ 44.)

Plaintiff Oros brings this lawsuit against Abercrombie for violation of the overtime provisions provided by the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207(a)(1) and by Ohio's analogous statute, the Minimum Fair Wage Standards Act, Chapter 4111 of the Ohio Revised Code. Abercrombie moves to dismiss Plaintiff Oros's claim under Count Two of the Amended Complaint relating to the Ohio Minimum Fair Wage Standards Act, on the grounds that Plaintiff Oros never worked within the State of Ohio and that he is attempting to extend Ohio law beyond the state's boarders to regulate employment relationships that exist entirely within other states.

## II.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant, by motion, to raise the defense of a plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court is authorized to grant a motion to dismiss under 12(b)(6) only where it is "clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While the Court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshal*, 898 F.2d 1196, 1199 (6th Cir. 1990), the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the

claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### III.

Ohio regulates the wages, hours and working conditions of employees working in the state through a combination of statutes, including the Minimum Fair Wage Standards Act, Ohio Rev. Chapter 4111. Ohio Rev. Code § 4111.03 "is a general law involving the concern of the state for all of its citizens." *Wray v. City of Urbana*, 2 Ohio App. 3d 172, 172-73, 440 N.E. 2d 1382, 1383 (Ohio Ct. App. 2d Dist. 1982). The law was enacted in the exercise of the state police power. *Dies Elec. Co. v. Akron*, 62 Ohio St.2d 322, 405 N.E.2d 1026 (1980).

Defendants argue that the application of Ohio's Minimum Fair Wage Standards law to Scott Oros's claim would violate the Commerce Clause of the United States Constitution. Plaintiff, on the other hand, contends that his employment relationship with Abercrombie, as an Ohio corporation, should be governed by Ohio law and subject to the state's labor laws, including the Minimum Fair Wage Standards Act.

Generally, statutes are presumed not to have an extraterritorial effect unless the legislature clearly manifests a contrary intent. *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188 (1993). A state's laws are "presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918). In other words, a state statute ordinarily will not operate beyond the limits of the state unless such an intent is clearly expressed or indicated by the language, purpose, subject matter, or history of the legislation. *See generally* 73 Am. Jur. 2d Statutes § 250.

-4-

The Ohio Minimum Fair Wage Standards Act does not specifically deny extraterritorial application. The terms "employer" and "employee" are not limited to those businesses or individuals in the State of Ohio. In particular:

> "Employer" means the state of Ohio, its instrumentalities, and its political subdivisions and their instrumentalities, any individual, partnership, association, corporation, business trust, or any person or group of persons, acting in the interest of an employer in relation to an employee, but does not include an employer whose annual gross volume of sales made for business done is less than one hundred fifty thousand dollars, exclusive of excise taxes at the retail level which are separately stated.

Ohio Rev. Code § 4111.01(C). Similarly, "employee" means "any individual employed by an employer," with several express exceptions not relevant here. Ohio Rev. Code § 4111.01(D). Further, Ohio Rev. Code § 4111.03(A) provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of . . . the 'Fair Labor Standards Act of 1938 . . . .'" No court in Ohio or federal court interpreting Ohio law, however, has ever applied the Ohio Minimum Fair Wage Standards Act extraterritorially to an out-of-state resident who performs all of his or her work and earns all of his or her wages in a foreign jurisdiction.

Plaintiff nonetheless argues that the wrongful conduct giving rise to his claim (*i.e.*, the decision not to pay him for overtime hours worked) and the fact that Abercrombie is an Ohio corporation dictate that the Ohio Minimum Fair Wage Standards Act can be applied to regulate his out-of-state employment. Yet, various practical and legal reasons compel the conclusion that the Ohio legislature did not intend for the wage and hour statute at issue to apply extraterritorially to employees like Oros who perform no work within the territorial limits of the State of Ohio. In

particular, the Commerce Clause of the United States Constitution prohibits Ohio from regulating the working conditions of a non-resident who performs work and earns wages outside of the state.

The Commerce Clause grants Congress the power to "regulate Commerce with foreign Nations, and among the several States. . . ." U.S. Const. art I. § 8, cl. 3. The Commerce Clause not only confers power on the federal government, "it is also a substantive 'restriction on permissible state regulation' of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991) (citation omitted). This substantive restriction is known as the "dormant" aspect of the Commerce Clause.

Generally, a state may not by its laws directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. *Baltimore & O.R. Co. v. Chambers*, 73 Ohio St. 16, 76 N.E. 91 (1905), *aff'd*, 207 U.S. 142 (1907). Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, application of the legislation may not place an undue burden on interstate commerce. The test for determining whether a statute should be struck down as violating the Commerce Clause balances the burdens on commerce against the interests of the state. "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

States are even more limited in their ability to legislate in areas that affect foreign commerce. "It is a well-accepted rule that state restrictions burdening foreign commerce are subjected to a more rigorous and searching scrutiny. It is crucial to the efficient execution of the Nation's foreign policy that 'the federal Government . . . speak with one voice when regulating commercial regulations with

foreign governments.'" *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 100 (1984)(citing Michelin Tire Corp. v. Wages, 423 U.S. 276, 285 (1976)).

Application of the Ohio Minimum Fair Wage Standards Act to Oros's employment in Pennsylvania would impermissibly burden interstate commerce. Abercrombie employs thousands of people in many states and is engaged in interstate commerce. Under Plaintiff's theory, any Ohio-based employer that operates in more than one state would be required to comply with the Ohio Minimum Fair Wage Standards Act with respect to all of its employees, even those who are not working in this state. Furthermore, using Plaintiff's analysis, an Ohio resident working in Ohio for a California-based company could file a claim in California for overtime or minimum wage violations under California's laws which provide for a higher minimum wage than both Ohio and the nation. Thus, extending Plaintiff's analysis to its logical conclusion, California's higher minimum wage would apply across the country, despite differing wage laws throughout the other states. Such an extension of another states' law creates the type of burden on interstate commerce that the Commerce Clause prohibits.

This case does not involve workers employed by an Ohio company who engage in employment in and out of Ohio. There is no claim that Oros ever worked for even a brief period of time in Ohio, which would change the analysis as to the applicability of Ohio law to his employment relationship.

In response to Defendants' Motion to Dismiss, Plaintiff Oros provides a lengthy choice of laws analysis and contends that the there is no conflict between the overtime provisions of the Ohio and Pennsylvania minimum wage laws. He argues that the overtime provides in the Ohio wage laws are virtually identical with Pennsylvania's law such that the outcome under either statutory

framework would be the same. Further, he contends that Ohio has the most significant relationship to Oros's overtime claims and, thus, the Court should apply Ohio law.

Plaintiff's choice of law analysis, however, is not applicable to his claim under the Ohio Minimum Fair Wage Standards Act. A choice of law analysis assumes that a valid claim exists and thereafter addresses the law governing the claim in the absence of an effective choice by the parties. In sum, Plaintiff Oros has provided no authority that Ohio's wage laws can or were intended to be applied extraterritorially to his work which he performed in Pennsylvania. Moreover, he has failed to address the insurmountable state sovereignty and constitutional barriers that are implicated by applying Ohio's law outside of its territorial boundaries.[1]

---

[1] Plaintiff relies heavily on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) for the proposition that the Court may apply Ohio's minimum wage laws to a non-resident plaintiff. In *Shutts*, the Supreme Court has held that application of only one state's law in the context of a class action may violate the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, § 1 of the Constitution. If there is a material conflict between the law of the forum state and other states implicated in a class action, the Court held in *Shutts* that, for a forums state's law to apply to a class action, the forum state must have a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff-class, in order to ensure that the choice of the forum state's law is not arbitrary or unfair.

At this juncture, however, application of *Shutts* is not appropriate. *Shutts* highlighted the fact that a nationwide class action raises potential Due Process Clause issues in the context of deciding whether to certify a class. While it held that due process does not preclude a court from certifying a nationwide class action, the Court was concerned about the issues of jurisdiction and manageability in a class action case involving non-federal questions.

In this case, the determination regarding class certification in Fed. R. Civ. P. 23 is not yet before the Court. In any event, Rule 23 may not be used as a procedural mechanism to avoid the Commerce Clause issues at stake here. The Ohio Fair Minimum Wage Standards Act invoked by Plaintiff does not expressly apply beyond the borders of State of Ohio. The fundamental constrictions of the Commerce Clause and the Due Process Clause on the scope of state regulatory jurisdiction, however, are "[substantive] limits that the procedural vehicle of a class action cannot justify transgressing." *In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003).

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff Scott Oros's Claim Under Count Two of the Amended Complaint (Doc. #35) is **GRANTED**.

**IT IS SO ORDERED.**

    5-17-2005
**DATED**

    EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**